VAN DE BOGART, Respondent, vs. MARINETTE & MENOMINEE PAPER COMPANY, Appellant.

*January 11—January 30, 1906.*

*Master and servant: Negligence: Injuries to servant: Assumption of risk: Contributory negligence: Infants: Obvious danger: Proximate cause: Special verdict: Instructions to jury: Prejudicial error.*

1. Plaintiff, a girl fifteen years old, was injured by the catching of her hair on a set-screw which held a collar on a shaft revolving so rapidly that the set-screw could not be seen. When injured

Van de Bogart v. Marinette & M. P. Co. 127 Wis. 104.

she was in the proper place for the performance of her duty, had little general knowledge of machinery, did not understand the relation of one part to the other, and did not know that the set-screws were used on the shaft, which with its attachments she had only seen in operation. *Held*, that plaintiff did not assume the risk of the negligence causing the injury.

2. In such case warning of danger of injury to her fingers from knives held onto the shaft through such set-screws is insufficient to apprise plaintiff of the danger of coming in contact with the set-screws.

3. The rule that knowledge of all obvious dangers is imputed to an adult servant and he assumes all risks incident to them applies to minors in so far as their age, intelligence, discretion, and judgment enable them to comprehend and appreciate such dangers.

4. In an action for personal injuries to a fifteen-year-old girl from machinery, in the absence of showing that she in fact knew of the danger which caused the injuries and in view of her age, intelligence, experience, discretion, and judgment, as shown by the evidence, stated in the opinion, it cannot be said, as matter of law, that she ought to have discovered and understood such danger.

5. A special verdict finding defendant negligent in using a set-screw on a machine at the place and manner it did, and that it thereby rendered plaintiff's working place unsafe; that plaintiff's hair caught in this set-screw while she was in the performance of her duty, and that it thereby caused her injury; and that persons of ordinary intelligence and prudence should reasonably have anticipated that the presence of the set-screw would cause some injury to employees working about the machine, sufficiently covers all the essential elements of proximate cause.

6. General instructions given to the jury, stated in the opinion, are *held* to have transgressed the rule requiring that instructions be confined to an explanation of the questions of the special verdict, without informing the jury of the legal effect of their answers to the questions.

7. Where instructions given were not erroneous, and no written requests for further instructions were made, no valid exception can be urged on the ground that abstract propositions were given on questions submitted to the jury without adequately covering the issues by the instructions applicable to the facts.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This is an action to recover damages which plaintiff claims

she sustained while in defendant's employ through defendant's negligence. The defendant is an incorporated company and owned and operated a paper mill at Marinette at the time the injury is alleged to have been done. The plaintiff was employed by the defendant in June, 1903, and was injured on August 24th following. She was fifteen years of age and had actually worked as a cutter girl at one of defendant's paper machines for four weeks before the day of the accident. The operating parts of this machine were held and supported by a frame, on which rested numerous rolls for carrying paper and shafts for the attachment of circular slitters or knives for cutting paper into different sizes. The slitters were movable upon the shafts, and permitted of adjustment on it for cutting sheets of paper of different sizes. They had collars at the point of attachment to the shafts, and the slitters were firmly held in place on the shaft by means of set-screws through the collars. Plaintiff's duties consisted in working at and about this machine, either in laying off sheets of paper as they came from the machine, or in removing the paper shavings cut by the slitter next to the edge of the paper so as to prevent them from clogging the machine and winding around the shafts and the knives. When engaged in removing the shavings her place of work was below the top rolls and slitters of the machine. The slitter shaft under which she performed this duty was about four and one-half feet above the floor on which she stood. In performing this duty it was necessary for her to incline her body somewhat and to reach up with her hands to pull down the shavings. When the slitters were in motion they revolved with such rapidity as to prevent one from seeing the set-screws, which projected from three-fourths to one and one-fourth inches out of the collars. Plaintiff was not required to be under this part of the machine when it was not in operation and motion, and she had not observed or seen the slitters and set-screws when the machine was not in operation. She did not understand the different parts of the

machine or the relationship of one to the other, nor did she observe them aside from what came to her notice generally in performing her particular duties while the machine was running. She understood the nature of her duties and that there was danger in working about machinery. She had been instructed that in removing the paper shavings there was danger of getting her fingers cut by the slitters, but aside from this she knew little about the machine, and she testified that she did not know what a set-screw was. The first three weeks of her employment she was engaged in receiving and piling up sheets of paper, and during the week before the accident she worked "on rolls," attending to the removal of the paper shavings. While so engaged "on rolls" she would be under the machine while actually removing shavings. At other times she stood away from the machine in a position from which she could observe the shavings. On the day of the accident she assumed her duties, working "on rolls." After having removed shavings in the usual manner and while standing beside the machine talking with others, she observed that the shavings failed to leave the slitter as they should and she went under the machine to attend to them. She stood under the machine in a stooping position, looking up at the shavings and working with her hands to remove them from the end slitter, and while thus engaged her hair caught in the revolving part of the machine immediately above her, drew her against the slitter shaft and inflicted severe injuries. It appears that there was a depressed fracture back of the temple about an inch in diameter, the bone having been driven into the brain. No new bone has formed, but the wound is healed over and covered with cicatrized tissue. There is testimony tending to show that she suffers much pain, and that since the injury she has fainting spells and is afflicted with sickness which she did not have before the injury. The case was submitted to a jury which rendered a special verdict, finding in effect: (1) The plaintiff was injured by having her hair caught on a set-screw

attached to a revolving slitter and shaft. (2) That her working place was not reasonably safe on account of the presence of the revolving screw. (3) The defendant was guilty of negligence in permitting the set-screw to be placed and used as it was. (4) That a person of ordinary intelligence and prudence should reasonably have anticipated that the set-screw as used and applied would likely cause injury to an employee working about the machine. (5) That a person of plaintiff's age, intelligence, discretion, experience, and judgment, in the exercise of ordinary care, would not have discovered and understood the danger to which she was exposed in her work. (6) The plaintiff was free from contributory negligence. (7) That she had suffered damages to the amount of $12,000.

Defendant moved to set aside the verdict and for a new trial, because the verdict was contrary to the evidence and the law, and because the damages assessed were excessive, and that the answers to questions 1, 2, 3, 4, 5, and 6 be stricken out, and that the court answer them, respectively, in the affirmative or negative, so as to find on each question the contrary to that of the jury. This motion was denied, and judgment was awarded the plaintiff for the damages found and for costs. This is an appeal from such judgment.

For the appellant there was a brief by *Vilas, Vilas, Jenner & Freeman,* and oral argument by *E. P. Vilas.*

For the respondent there were briefs by *I. B. Kirkland* and *Eastman & Martineau,* and oral argument by *Mr. Kirkland* and *Mr. P. H. Martineau.*

SIEBECKER, J. It is urged that plaintiff assumed the risk of the negligence of which she complains as the cause of her injury. If she knew, or under the circumstances ought to have known, the danger of which she now complains as negligence, then she assumed the risk and cannot recover. There is no dispute but that she was in the proper place for the per-

formance of her duty at the time of the accident. She had but little general knowledge of machinery and she did not understand the relation of one part to the others. She had no special knowledge of the construction and operation of the machine in question aside from a general impression that she gathered while observing it in operation. It appears that she did not know that set-screws were used to fastened the slitters to the revolving shaft. So far as the record shows, these set-screws could not be seen when the shaft was in motion, and plaintiff did not see the shaft and the attachments except when in operation. It is claimed that the warning given her of the danger of injury to her fingers from the knives and of getting her hand caught in the slitters was sufficient to apprise her of the danger from the set-screws holding the slitters in position on the shaft. It is not apparent how such a warning could lead her to know of the existence of the set-screws, or of the danger of coming in contact with them. Knowledge of the liability of injury to her hands by contact with the knives or slitters in removing the paper shavings from them, and an appreciation of the risk arising from the use of these set-screws, are widely different things, and any information imputable to her as to the former furnishes no ground for holding that this would naturally have informed her of the danger incident to the latter.

It is also contended that the court erred in submitting the question of plaintiff's contributory negligence, and whether or not, in view of her age, intelligence, discretion, and judgment, she ought in the exercise of ordinary care to have discovered and understood the dangers to which she was exposed. Knowledge of all obvious dangers is imputed to an adult servant and' he assumes all risks incident to them. The same rule applies to minors in so far as their age, intelligence, discretion, and' judgment enables them to comprehend and appreciate these obvious dangers. We think the court held correctly in submitting these questions to the jury upon the facts and circum—

stances shown by the evidence. It did not appear that she in fact knew of the danger, and it cannot be said as a matter of law that in view of her age, intelligence, experience, discretion, and judgment she ought to have discovered and understood it. *Chopin v. Badger P. Co.* 83 Wis. 192, 53 N. W. 452; *Luebke v. Berlin M. Works,* 88 Wis. 442, 60 N. W. 711; *Renne v. U. S. L. Co.* 107 Wis. 305, 83 N. W. 473; *Thompson v. Edward P. Allis Co.* 89 Wis. 523, 62 N. W. 527.

It is claimed that the question of proximate cause is not covered by the verdict or by the court's instructions to the jury. The jury by the special verdict found that the defendant was negligent in using the set-screw on the machine at the place and in the manner it did, and that it thereby rendered the plaintiff's working place unsafe; that plaintiff's hair caught on this set-screw while she was engaged in the performance of her duty and that it thereby caused her injury; and that a man of ordinary intelligence and prudence should reasonably have anticipated that the presence of the set-screw would cause some injury to employees working about the machine. Taking these facts as so found, it appears that the injury was actually caused by defendant's negligence; that it was the natural and probable result of it; and that defendant as a person of ordinary intelligence and prudence ought, in the light of attending circumstances, to have foreseen that it would probably cause some one injury. This sufficiently covers all the essential elements of proximate cause, and the court was not required to give further explanation than it did in submitting the question of proximate cause to the jury.

It is contended that the court gave the jury general instructions on questions of ultimate fact and thereby transgressed the rule requiring that instructions be confined to an explanation of the questions of the special verdict, without informing the jury of the legal effect of their answers to the questions. It is averred that the instructions plainly informed them of the legal effect of their findings on negligence, contributory

negligence, and assumption of risk.  An examination of the
charge shows that this claim is well founded.  Before giving
instructions on the special verdict on different aspects of the
case, the court charged the jury generally concerning the na-
ture and theory of plaintiff's case, and the classes of facts they
would need to consider in negligence cases, and then stated
what he intimates had been communicated to them by counsel:

"If this injury was the result of a pure accident for which
nobody was to blame, of course the defendant is not liable, and
the plaintiff has no right to recover anything from them. . . .
In other words, there can be no liability on the part of any-
body resulting from a pure accident.  It requires something
else in order to create a liability."

This certainly was plainly information to the jury that if
they found defendant was not negligent in causing the acci-
dent no liability would result, and that to make defendant
liable they must find negligence on its part.  Another instruc-
tion informed them generally as to the duty of the master to
furnish a safe place for his servants to perform their duties.
This was not required to inform them of what constituted a
reasonably safe place and manifestly apprised them of the
legal effect of a finding that the master had failed in his duty
in this respect.  Again, in connection with the question of the
verdict as to whether plaintiff was injured by her hair catch-
ing on the set-screw, the jury was told, "The plaintiff bases
her case upon the proposition that she was injured in that
way," which is saying in effect that, if the jury found that she
was not so injured, then she had failed to show the grounds
necessary to entitle her to recover.  This instruction was in
effect repeated in submitting question No. 2 of the verdict, in
a like prejudicial way.  The court gave a number of quite
lengthy instructions upon question 3, involving the question
of negligence in respect to the set-screw, in which the em-
ployer's duty under the statutes (sec. 1636j, Stats. 1898) to
guard and securely protect shafting that may be dangerous to
employees was repeatedly adverted to and explained to the

jury in different ways. They plainly informed the jury that no liability would follow if defendant was found free from negligence in this respect. These instances suffice to show that the general instructions given were clearly prejudicial to the defendant's statutory rights to have the cause determined by a special verdict, "entirely uninfluenced by any thought as to the final result to be reached by any application of the law to the facts." The practice of giving instructions which impart such information has been considered so often that we cannot hope to add anything further by way of explanation or condemnation. Among the many cases on the subject we call attention to those collected in *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311. An invasion of this right of the parties to litigation operates to deprive them of a valuable statutory right, and as stated in *Gerrard v. La Crosse City R. Co.* 113 Wis. 258, 89 N. W. 125, in speaking of the effect of giving such instructions: "For this reason there must be a reversal of the judgment, irrespective of any other question." *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36.

Another objection to the charge was that abstract propositions were given on questions submitted to the jury without adequately covering the issues by instructions applicable to the facts. Since the instructions given were not erroneous, and since no written requests were made for instructions on these subjects, no valid exception can be urged on this ground. *Hacker v. Heiney,* 111 Wis. 313, 87 N. W. 249; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837; *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 98 N. W. 546; *Taylor v. Seil,* 120 Wis. 32, 97 N. W. 498.

The exceptions urged to the admission of evidence over defendant's objection are without prejudice. The evidence was material and relevant to the issues being litigated and was properly submitted to the jury.

The amount of damages awarded by the jury is assailed as

grossly excessive under the facts established by the evidence. It is contended that the evidence fails, as claimed by plaintiff, to show permanent lesions caused by the injury. There is evidence tending to show that she has suffered pain and is now subject to attacks of sickness as a result of the injury, and evidence tending in some degree to support a probability that these conditions may be permanent. The direct as well as the opinion evidence on these questions is uncertain and does not furnish a clear and substantial basis for an inference that these afflictions all resulted from the injury, and it falls short of that reasonable certainty necessary to show that they are the permanent results of lesions caused by the injury. Since a new trial must be awarded wherein the proof of plaintiff's injuries may be more clearly and satisfactorily shown, we will express no opinion on the subject of the amount of damages.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.