SCHUMACHER, by guardian *ad litem,* Respondent, vs. TUTTLE
PRESS COMPANY, Appellant.

*April 8—April 26, 1910.*

*Master and servant: Injury to minor servant: Assumption of risk:
Questions for jury: Instructions: Burden of proof: Immaterial
errors.*

1. A minor servant assumes the risk of open and obvious dangers of
   work in which he may lawfully be employed.
2. But an inexperienced minor is not always charged with knowl-
   edge of risks which might be obvious to an adult, and will not
   be deemed as matter of law to have assumed such risks unless
   it appears that he not only knew or ought to have known the
   proximity of the dangerous agency from which the injury re-
   sulted, but also comprehended and appreciated, or ought to have
   comprehended and appreciated, the extent of the risk to which
   its proximity subjected him, especially where the situation is
   obscure or complex.
3. In an action for injuries to a boy sixteen years old whose hand
   was caught and crushed between rollers in a rotary printing
   press, the questions as to whether he knew or ought to have
   known and comprehended the danger of such injury were, upon
   the evidence, properly for the jury.
4. In charging the jury respecting question No. 12 of the special
   verdict, which asked whether defendant's failure to give proper
   warning was the proximate cause of plaintiff's injury, the trial
   judge referred twice to "this question No. 12." He defined
   proximate cause, and stated that 'plaintiff contended that such
   failure to give warning was the proximate cause of the injury,
   but that defendant contended that the proximate cause was
   plaintiff's own negligence and carelessness, and then said: "The
   burden of proof on this question is on the defendant." *Held,*
   that the words "this question" in the last statement must have
   been understood by the jury as referring, not merely to defend-
   ant's contention as to plaintiff's negligence, but to the question
   in the special verdict which they were required to answer; and
   the charge was therefore erroneous, the burden of proof as to
   such question being on the plaintiff.
5. Misplacing the burden of proof as to a material question in a
   close case is an error affecting a substantial right and necessi-
   tating a reversal.

6. Refusal to give a requested instruction is not prejudicial to the party requesting it when by such refusal he is relieved of the burden of proving a certain fact.
7. Requested instructions correctly placing the burden of proof as to material questions in the special verdict should be given.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Personal injuries. The plaintiff was employed by defendant in July, 1908, as an errand boy and to do sweeping out and general work about its large printing plant. He worked in this capacity till October, when he was set to work at a rotary printing press and was injured two or three days later, at which time he was ten days more than sixteen years old. This press was twelve feet long east and west, four feet wide, and four feet in height. It rested on two twelve-foot steel beams running east and west, which in turn rested on the cement floor of the pressroom. Under the press was a pit nineteen and one-half inches deep below the floor. In this pit plaintiff was set to work. It was his duty to sit or partially recline upon the floor of the pit under the east end of the press and in such position as to watch some slitters or shears some distance above his head near the southeast corner of the framework of the machine, which slitters trim off the margin of the paper before it passes between the printing rolls. It was further his duty to shove the shavings from the slitters back towards the west end of the pit as they accumulated, and if the slitters became clogged it was his duty to grasp a rope near at hand and give it a jerk, and thus stop the press in order that the tangled paper shavings might be removed. This rope or cord was fastened to the electric controlling lever on the south side of the press, and then ran down into the west end of the pit and back nearly to the east end thereof, and was tied to the center of a steel beam which ran from north to south between the two twelve-foot beams on which the press rested. This crossbeam was nine and three-

fourths inches from the east end of the pit, and was immediately above the plaintiff's shoulders as he reclined in the pit. Above this beam and a little to the west thereof were the large type roller and a smaller ink roller of the press which ran together in contact turning upwards, their point of contact being thirteen and one-half inches above the lower side of the transverse steel beam.

On the evening of October 15, 1908, at about 9:15 o'clock, while the plaintiff was at work in the pit, his right hand was caught between the two rollers above mentioned and drawn in and badly mangled and crushed before the machine could be stopped. The plaintiff claimed that as he was watching the slitters and moving back the shavings the slitters clogged, and he grabbed for the rope to stop the press, but grabbed too high, and that his right hand went in between the rollers. The negligence claimed was that he was not sufficiently warned of the danger before he was set at work.

A special verdict was found by the jury to the following effect: (1) That the plaintiff was injured as stated; (2) that the rollers were so located as to be dangerous to an employee working in the pit; (3) that plaintiff did not know at the time of the injury that there was danger of serious injury to him from working in the pit by getting his hand into the rolls; (4) that the plaintiff in the exercise of ordinary care ought not to have reasonably anticipated that there was such danger; (5) that the defendant in the exercise of ordinary care ought to have foreseen that such rollers might probably cause personal injury to an employee working where plaintiff was working; (6) that defendant ought to have known that plaintiff required warning in order to comprehend the danger incident to his employment; (7) that plaintiff was not of sufficient age, understanding, and experience to comprehend such danger; (8) that no want of ordinary care on plaintiff's part contributed to his injury; (9) that there was danger in plaintiff's work which was not open and obvious to a person

of his age, experience, and apparent intelligence; (10) that defendant ought to have anticipated that plaintiff would not know of such danger and might, because of his ignorance, probably be injured as he was; (11) that defendant did not give plaintiff sufficient warning and instruction to advise him of the danger to which he was subjected; (12) that such lack of warning was the proximate cause of plaintiff's injury; (13) that plaintiff's damages were $4,000.    The defendant moved for judgment *non obstante,* also to set aside the verdict, and for a new trial in case the former motion should not be granted.    Both motions being denied and judgment entered on the verdict for the plaintiff, the defendant appeals.

*C. G. Cannon,* attorney, and *C. B. Bird,* of counsel, for the appellant.

For the respondent there was a brief by *Albert H. Krugmeier* and *Fred V. Heinemann,* and oral argument by *Mr. Krugmeier.*

WINSLOW, C. J.    The defendant's chief contention is that a verdict for the defendant should have been directed on the undisputed evidence because the danger was so open and obvious that the plaintiff, though only a boy of sixteen, must be held to have assumed the risk.    In support of its position appellant cites *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Bigelow v. Danielson,* 102 Wis. 470, 471, 78 N. W. 599; *Helmke v. Thilmany,* 107 Wis. 216, 83 N. W. 360; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *Upthegrove v. Jones & Adams C. Co.* 118 Wis. 673, 96 N. W. 385; *Horn v. La Crosse B. Co.* 123 Wis. 399, 101 N. W. 935; *Kuich v. Milwaukee B. Co.* 139 Wis. 101, 120 N. W. 261; and cases of a similar nature from other jurisdictions.    On the other hand, the respondent cites and relies upon *Chopin v. Badger P. Co.* 83 Wis. 192, 53 N. W. 452; *Thompson v. Johnston Bros. Co.* 86 Wis. 576, 57 N. W. 298; *Renne v. U. S. L. Co.* 107 Wis. 305, 83 N. W. 473; *Van de*

*Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805; *Wankowski v. Crivitz P. & P. Co.* 137 Wis. 123, 118 N. W. 643; and *Novak v. Nordberg Mfg. Co.* 141 Wis. 298, 124 N. W. 282.

That the case is a close one is undeniable. There are many such and of necessity must be. It is not that the rules of law applicable are doubtful or involved, but that the facts of no two cases are alike, and there must be a large field where it is difficult to say whether a given case reaches or crosses the line which the law lays down as the limit. In such cases two different minds will be apt to reach different conclusions, though both be honest and both be attempting to apply the same abstract principle of law. The infirmity is one inherent in the human reason. In no class of cases is the difficulty more serious than in the class covering injuries to minor employees resulting from the operations of complicated machines about which they are working. That seems to be demonstrated by the confidence with which both sides in the present case cite and rely upon Wisconsin decisions. Could there be found some infallible rule which could be automatically applied to every such case and determine with mathematical exactness whether or not the plaintiff was entitled to recover, this court would be relieved of much labor. But there can be none.

It is settled of course that, notwithstanding the fact of his infancy, a minor assumes the risks resulting from open and obvious dangers, at least if the minor has reached the age when he may be lawfully employed in such labor. But what may be an open and obvious danger to an experienced adult may not be such to an inexperienced minor and hence there will infallibly be cases where, under the application of this rule, a court must direct judgment against an adult while under precisely the same circumstances it could not rightly do so in the case of a minor. This is not only humane but logical. The child presumably lacks the reflective and reasoning

power as well as the experience of the man, and the law, which is supposed to be the perfection of human reason, makes allowance for the deficiency in this respect of the childish character. So this court has, in no uncertain terms, laid down the rule that while the ordinary adult assumes the risks resulting from open and obvious dangers which he knows or ought to know, and cannot say he did not fully comprehend or appreciate them, the inexperienced minor is not always charged with knowledge of risks which to the adult are obvious, and he does not as matter of law assume such risks unless it appears that he not only knew or ought to have known the proximity of the cog wheel or roller or other dangerous agency from which the injury resulted, but also comprehended and appreciated, or ought to have comprehended and appreciated, the extent of the risk to which its proximity subjected him. Especially is this latter rule applicable in a case where the situation is obscure or complex. *Gierczak v. Northwestern F. Co., ante,* p. 207, 125 N. W. 436. There are cases, as the decisions cited show, where the court is justified in holding as matter of law that a minor assumed the risk; but it will be found on examination that they are generally cases where the minor was nearly of age and had had a man's experience, or where the situation was free from obscurity or complexity, the danger in plain sight, and the minor's attention necessarily directed toward the dangerous knife, or cog, or roller by the very nature of the business.

We regard the present case as peculiarly one for the jury and not for the court. The plaintiff here was compelled to work in a very cramped position and in poor light. He had nothing at all to do with the rollers in which his hand was caught. While he knew there were rollers in that general direction, he had never had occasion to observe closely their proximity to himself. His duty was to closely watch the slitters and to be ready to act quickly in case of the shavings becoming clogged. While so engaged the rollers were not

only out of his mind, but the testimony tends to show that they were also out of his range of vision by reason of the interposition of the steel crossbeam between his eyes and the rollers. The rope also which he was required to pull was outside of his range of vision, and he had to grab at it from general knowledge of its location rather than from vision. Under all these circumstances, which the evidence either proved or tended to prove, we think that the case was a proper one for the jury.

Two minor rulings upon evidence are assigned as error, but we do not consider them as of sufficient importance to require treatment. There was certainly no prejudicial error in either of them.

A question of serious difficulty arises upon the charge. The twelfth question asked the jury whether the lack of warning was the proximate cause of injury. The court in charging the jury told them that if they answered question No. 11 "Yes," they need not answer "this question No. 12" at all, but that if they answered question No. 11 "No," then they must answer "this question No. 12." The court then correctly defined proximate cause and proceeded as follows:

"It is contended on the part of the plaintiff that the failure to give proper warning and instruction to the boy or this plaintiff was the proximate cause of the injury. On the part of the defendant, however, this is denied, and it is contended that this was not the proximate cause of the injury, but the proximate cause of the injury was the boy's own negligence and carelessness. It is for you to determine what the fact was. The burden of proof on this question is on the defendant. By burden of proof is meant that the party which has the burden of proof must satisfy you by a preponderance of the evidence of the facts claimed. After considering all the evidence, then you will answer that question either 'Yes' or 'No' as you may find the fact to be."

It will be noticed that the court here told the jury plainly that the burden of proof on "this question" was on the defend-

ant. If "this question" meant question No. 12, this instruction is admitted to be error, because the plaintiff always has the burden of showing that the negligence complained of was the proximate cause of the injury. But it is claimed that "this question" as here used must have been understood to refer to the defendant's contention which had just been stated, namely, that the boy's own negligence was the proximate cause of the injury. We should prefer to so hold. Doubtless this was the intention of the trial judge, whose learning and long experience forbid us from entertaining the idea that he intentionally charged the jury that the defendant had the burden of proof on the question of proximate cause. But the difficulty is that we can see no justification for so holding. In the first part of the instruction the judge had referred twice to "this question," both times referring to question No. 12. After stating four intervening propositions he again refers to "this question." He had stated two contentions, but he had stated no new question save in the sense that a matter under consideration is sometimes called a question. He had used the word "question" many times in his charge before reaching this point, and always with distinct reference to one of the questions of the special verdict. There can be no reasonable doubt, we think, but that the jury must have understood the word "question" in its true, natural sense as referring to the question which they were required to answer.

The instruction being erroneous, the next inquiry is whether it appears to have affected the substantial rights of the defendant, for, unless it does so appear, the judgment is not to be reversed on that ground. Sec. 3072$m$, Stats. (Laws of 1909, ch. 192). That it does so appear we cannot doubt. Where a question of fact is close and doubtful, as in this case, the question of which side has the burden of proof is always of great importance. Any one who has tried a question of fact himself upon evidence nearly evenly bal-

-anced has experienced the importance of the rule, and has frequently been compelled to decide such questions on the consideration alone that he upon whom lay the burden of proof had not been able to lift it. To have this burden wrongly placed on the crucial point of a close case seems un--questionably to be the deprivation of a substantial, not a mere technical, right. We therefore reluctantly conclude that this error necessitates reversal. *Grenawalt v. Roe,* 136 Wis. 501, 117 N. W. 1017.

There were certain refusals to instruct which must also be noticed. The third question asked whether the plaintiff knew that there was danger of getting his hand in the rolls while working in the pit, and the defendant asked to have the jury instructed that unless they were satisfied to a reason-able certainty by the fair preponderance of the evidence that this question should be answered "Yes," then they must an--swer it "No." This was doubtless a correct instruction, but its refusal could work no prejudice to the defendant. The error thereby committed was favorable to the defendant, for the reason that it was relieved from assuming the burden of proving knowledge of the danger or assumption of risk. The same instruction was asked as to the fifth and sixth questions and manifestly should have been given. Affirmative answers to these questions were necessary links in the chain of facts constituting negligence on the part of the defendant, and it was entitled to instructions requiring that such facts be proven by the preponderance of the evidence.

The eleventh question asked whether sufficient warning of the danger was given by defendant, and on this question it requested an instruction that it should be answered "Yes," unless the jury were satisfied by the preponderance of the evidence that it should be answered "No." This instruction was refused, but it should have been given. A negative an-swer to this question was another necessary link in the chain

of facts constituting defendant's actionable negligence, and hence the burden was on the plaintiff to produce evidence justifying such an answer.

There are no other contentions made which are deemed of substantial merit.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

SIEBECKER, J., dissents.